

ascentium CAPITAL

# LEASE AGREEMENT
2167754

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

| | | |
|---|---|---|
| LESSEE: Cincinnati | CENTRAL USA WIRELESS, LLC<br>11210 MONTGOMERY RD<br>CENTERVILLE OH 45429 Cincinnati | EQUIPMENT: See Schedule A |
| EQUIPMENT LOCATION: | 11210 MONTGOMERY RD, CENTERVILLE, OH 45429 | |

| INITIAL TERM: (in months) | PAYMENT SCHEDULE: (plus applicable taxes) | END OF LEASE PURCHASE OPTION AMOUNT: |
|---|---|---|
| 60 | 60 @ $2,895.00 | $1 Buyout<br>ONE DOLLAR BUYOUT |

1. Lease: Lessor, Ascentium Capital LLC ("Lessor", "we", "us" or "our") agrees to lease to Lessee ("you" or "your") and you agree to lease from us the equipment, products and/or services described above (the "Equipment"). All amounts received from you under this Lease shall be applied to amounts owed by you hereunder as we determine in our sole discretion.

2. Term: The term of this Lease shall consist of an interim term ("Interim Term"), initial term ("Initial Term") and one or more renewal terms, if any ("Renewal Term"). The Interim Term, Initial Term and Renewal Term are referred to collectively as the "Term". The Interim Term shall commence on the date ("Commencement Date") we fund the purchase price of the Equipment following the acceptance of the Equipment by you for all purposes under this Lease, and shall terminate on the day prior to the commencement of our applicable monthly billing cycle, which latter date shall be the date the Initial Term commences as designated by us. Upon your acceptance of the Equipment, your obligations under this Lease become irrevocable.

3. Payments; Interim Rent: You request that we purchase the Equipment you selected. We shall have no liability under this Lease whatsoever until the satisfaction in our sole discretion of all conditions we may specify. You agree to pay us the periodic rent payments (each a "Payment") shown above for each month during the Initial Term and any Renewal Term and all other amounts that become due from time to time under this Lease. The amount of each Payment is based upon the total estimated cost of the Equipment you have provided to us. If the final cost of the Equipment we pay the supplier is higher or lower from that estimate, we will adjust the amount of each Payment proportionately higher or lower than the Payment amount set forth above. The first Payment other than an advance payment shall be due and payable on the date specified by us in our sole discretion ("First Payment Date") and all subsequent Payments are due on the same date of each subsequent month during the Term regardless of whether you receive an invoice for such Payment. On the First Payment Date you also agree to pay us Interim Rent in an amount equal to 1/30th of the amount of each Payment for each day of the Interim Term.

4. Security Deposit: If you are in default of your obligations under this Lease, we may apply the Security Deposit to any amounts due hereunder and you will promptly upon demand replenish any such amount. If upon the expiration of the Term and provided you are not then in default hereunder, if you have either returned the Equipment to us in good working condition and appearance or if you have duly exercised any purchase option with respect to the Equipment in your favor as provided herein and the purchase price has been received in cash by us, we shall thereafter promptly pay any security deposit held by us, without interest, to you at your written direction. You agree that we may commingle the security deposit with our other assets.

5. Collection Charges: Whenever any amount due under this Lease is not made when due, you will upon our demand pay us the following, or if less, the maximum allowed by applicable law: (a) a late charge equal to the greater of 10% of such amount or $25, and (b) a charge of $30 for each check returned or ACH debit not honored for any reason and (c) if we have had to perform collection activities in connection with such late payment, our specified collection charges then in effect for such activities. The foregoing will not be construed as interest but as reimbursement to us to cover administrative and overhead expenses related to the processing and collection of the late amount.

6. Statutory Finance Lease; Agency and Selection of Equipment; Computer Software: You agree that it is the intent of both parties that it qualify as a statutory finance lease under Article 2A of the Uniform Commercial Code ("UCC") and, to the extent permitted by applicable law, you waive any right you may have under Sections 2A-303 and 2A-508 through 2A-522 of the UCC. You acknowledge that you have selected both the Equipment and the supplier and that we have not participated in their selection and we have not manufactured or supplied the Equipment. We hereby assign to you, so long as you are not in default hereunder, our assignable rights under any contract of ours with the supplier relating to the Equipment; you should contact the supplier directly for a statement of those rights, if any. You agree that no representative of the manufacturer of the Equipment ("Manufacturer") or the supplier is acting on our behalf. You agree that as to any software constituting Equipment: (a) we have no title to such software, (b) you have executed or will execute a separate software license agreement and we are not party to and have no responsibilities whatsoever in regards to such license agreement, (c) you have selected such software, and WE MAKE NO REPRESENTATION OR WARRANTY REGARDING SUCH SOFTWARE.

7. Warranties and Limitation of Liability; Non-cancelable Lease: WE MAKE NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING WITHOUT LIMITATION THE DESIGN OR CONDITION OF THE EQUIPMENT ITS MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WE WILL HAVE NO LIABILITY BY REASON OF ANY ACT OR OMISSION RELATING TO THE EQUIPMENT OR ITS LEASE, DELIVERY, INSTALLATION, MAINTENANCE, OPERATION, PERFORMANCE, OR USE, INCLUDING WITHOUT LIMITATION ANY LOSS OF USE, LOST REVENUE, LOST PROFITS. LESSEE UNDERSTANDS THAT LESSOR IS A SEPARATE AND INDEPENDENT COMPANY FROM SUPPLIER OR ANY VENDOR, MANUFACTURER, DISTRIBUTOR OR LICENSOR OF SOFTWARE, AND THAT NONE OF THEM NOR ANY AGENT OR EMPLOYEE OF ANY OF THEM IS LESSOR'S AGENT. LESSEE AGREES THAT NO REPRESENTATION, GUARANTEE OR WARRANTY BY ANY SUCH ENTITY OR PERSON IS BINDING ON LESSOR, AND NO BREACH BY ANY SUCH ENTITY OR PERSON WILL EXCUSE OR OTHERWISE AFFECT LESSEE'S OBLIGATIONS TO LESSOR. You also acknowledge and agree that (i) you have fully inspected and accepted the Equipment hereunder and the Equipment is in good condition and to your complete satisfaction; and (ii) you lease the Equipment "as is" and with all faults. THIS LEASE IS IRREVOCABLE FOR THE FULL TERM. YOUR OBLIGATION TO PAY ALL AMOUNTS PAYABLE BY YOU UNDER THIS LEASE, IS ABSOLUTE AND UNCONDITIONAL AND WILL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SETOFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT FOR ANY REASON WHATSOEVER, INCLUDING ANY DEFECT IN THE EQUIPMENT.

8. Location; Use; Maintenance; Return of Equipment: You agree that the Equipment will be used solely for business or commercial purposes. You will not alter, modify or make additions or improvements to the Equipment without our prior written consent. Any additions to the Equipment shall become our property. You agree not to change the location of the Equipment without our advance written consent, and you agree to provide us access to inspect it. You will, at your sole expense, maintain the Equipment in good operating condition and repair as specified by its Manufacturer using in every case Manufacturer approved replacement parts. You agree to maintain the Equipment's appearance, free of nicks, dents, tears and other blemishes and protect the Equipment from deterioration, other than normal wear and tear from proper use. If the Manufacturer provides a maintenance plan for the Equipment, the Equipment will at all times be maintained in such a condition as to be eligible for such program. Upon the expiration or other termination of this Lease, unless a Purchase Option is exercised, you will return possession of the Equipment, along with all manuals and any other related documents, to us in the condition required above, packaged and shipped as recommended by the Manufacturer to any location designated by us. The Equipment must be returned in a condition whereby it can be placed into revenue producing service at its original designated function or capacity. All costs and expenses of the return shall be borne by you, including but not limited to disassembly, removal, transportation, insurance and unloading the Equipment.

9. Title; Registration: You will at all times and at your sole cost and expense keep the Equipment free and clear from all liens and encumbrances whatsoever (except any placed thereon by us) and will give us immediate written notice of any claims against the Equipment. Each item of Equipment subject to title registration laws will at all times be titled and/or registered in such a manner and jurisdiction as we direct.

10. Taxes and Fees: You agree to pay when due, and to indemnify and hold us harmless from, all taxes, fees, fines and any related interest and penalties relating to this Lease and the Equipment ("Taxes") or to reimburse us on our demand for those Taxes we agree, in our sole discretion, to pay on your behalf. Unless and until we advise you to the contrary we will pay any personal property Taxes relating to the Equipment directly to the applicable taxing authority. If any taxing authority requires any Taxes to be paid in advance, you authorize us to advance the Tax and increase the Equipment cost by such amount and increase the amount of each Payment as described in Section 3 above. With respect to personal property and any other Tax we have elected to pay directly on your behalf, you also agree to pay to us processing fees of ours. You agree to pay us fees in amount in effect from time to time in connection with the documentation of this Lease and any site inspection and lien search we deem necessary. You agree that all such fees may not only cover our costs they may also include a profit.

11. Risk of Loss; Indemnity; Insurance: You are responsible for any loss, damage or destruction of the Equipment. No such loss, damage or destruction will relieve you from the payment obligations under this Lease. You agree to promptly notify us in writing of any loss, damage or destruction and you will then at our election promptly repair the Equipment at your sole cost and expense or pay to us in addition to all amounts then due and owing, the total of all unpaid Payments for the Initial Term or Renewal Term (as the case may be) plus our booked residual interest in the Equipment, all discounted to their then present value at three percent (3%) per annum. Any proceeds of insurance will be paid to us and credited to any amount owed by you hereunder. You agree to indemnify and hold us, our members, directors, officers and employees harmless from and against any and all claims, costs, expenses, damages and liabilities, including reasonable attorneys' fees, arising out of your selection, possession, operation, use or disposition of the Equipment. During the Term, you will, at your expense, procure and maintain comprehensive general liability and casualty insurance acceptable to us on the Equipment. Each insurance policy will name us as additional insured and loss payee. You will furnish to us a certificate of insurance that such insurance coverage is in effect. If you do not provide us with acceptable evidence of insurance, we may, but will not be required to, buy such insurance for our sole benefit and add a charge to the Payments which will include all costs associated with obtaining such insurance, including (i) premium expense, and (ii) fees for billing and other administrative services.

12. Assignment; Representations & Warranties: You agree that without our prior written consent, you will not assign or transfer your rights under this Lease, or sublease or permit the Equipment to be used by anyone other than you. We may assign this Lease, in whole or in part, without notice to you or your consent. You agree that the assignee will have the same rights and benefits that we have now and will not have to perform our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set offs that you may have against us. You represent and warrant to us that all information conveyed to us in connection with this Lease and all related documents whether by you, a guarantor, the supplier or any other person, is true, accurate, complete and not misleading. If you are entity, the person executing this Lease on your behalf represents to us they are authorized to do so making the Lease the valid and binding act of the entity.

EXHIBIT
tabbies
A

[illegible]

[illegible]

[illegible]

[illegible]

| [illegible] | | ACCEPTED BY LESSOR: [illegible] Capital LLC | |
|---|---|---|---|
| [illegible] | [signature] CEO | By: | [signature] |
| [illegible] | CHRISTOPHER HILDEBRANT | [illegible] | |
| Title: | [illegible] | Title: | [illegible] |

[illegible]

| [illegible] | [signature] | [illegible] | |
|---|---|---|---|
| [illegible] | [illegible] | [illegible] | |

[illegible]

| [illegible] | PEOPLES BANK | [illegible] | CENTRAL USA WIRELESS |
|---|---|---|---|
| [illegible] | 11630700 | [illegible] | 047204932 |
| [illegible] | [signature] CEO | [illegible] | CHRISTOPHER HILDEBRANT CEO |



**SCHEDULE A**
**TO**
**AGREEMENT No. 2167754**

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

**Items of personal property as generally described below: Ascentium and Debtor/Lessee agree that a more detailed description of the property being financed shall be maintained by Ascentium among its books and records in whatever more detailed description of the property financed is received from the supplier of such property and, absent manifest error, such detailed description shall be considered incorporated into the Agreement and shall be provided to Debtor/Lessee promptly upon request.**

**PERSONAL PROPERTY DESCRIPTION(S):**

2012 DITCH WITCH/2005 DITCH WITCH VACUUM

| DEBTOR/LESSEE: | CENTRAL USA WIRELESS, LLC | SECURED PARTY/LESSOR: | Ascentium Capital LLC |
|---|---|---|---|
| Signature: | [signature] | By: | [signature] |
| Printed Name: | CHRISTOPHER HILDEBRANT | Printed Name: | Bryan S. Wheeler |
| Title: | Chief Executive Officer | Title: | Senior Vice President |

The person signing this Schedule A represents and warrants that this Schedule A has been duly authorized by any and all action required of the corporation, partnership, limited liability company or other form of business (whichever applies in your case), and no consent of any other person or entity is necessary; the Debtor/Lessee entity or person has complete power to enter into this Schedule A, and the person signing on behalf of the Debtor/Lessee has been authorized to do so; this Agreement is a legal and binding obligation of the Debtor/Lessee entity, and enforceable against the Debtor/Lessee in accordance with its terms and conditions; all factual statements made in this Agreement and all other information supplied to Secured Party/Lessor by the Debtor/Lessee entity or its representatives, is true, accurate and complete in all material respects.

# Invoice

MTI® Equipment
830 South River Rd
Englewood, FL 34223

| Date | Invoice # |
|---|---|
| 11/6/2015 | 2656 |

**Bill To**
Central USA Wireless, LLC
9050 Centre Point Drive
Suite 160
West Chester, OH 45069

**Ship To**
Central USA Wireless, LLC
408 Braker Lane
Austin, TX 47453

| P.O. Number | Terms | Rep |
|---|---|---|
| | Due on receipt | BH |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | Misc. Item | •2012 Ditch Witch JT2020 Mach 1 Directional Boring Machine, s/n:CMWJ2020PC0001627, New Firestick Style Drive Chuck<br>•400' of New Firestick Style Dirt Drill Stem<br>•New Melfred Borzall 10-ton Clevis X Clevis Swivel | 100,000.00 | 100,000.00 |
| 1 | Misc. Item | •2005 Ditch Witch FX30 Vacuum System, s/n:2Z1543 800gal Vac Trailer | 27,000.00 | 27,000.00 |
| 1 | Misc. Item | New Ditch Witch FM13V Mud Mixing System, s/n:CMWFM13VPF0002748, w/1000gal Tank, 25' Water Supply Hose<br>New Dirt Housing Package (Head/Spud/4" Steep Taper Jagger Bit/Firestick EZ Connect/Oct. Collar) | 17,500.00 | 17,500.00 |

Schedule A
This document constitutes all or part of the Schedule A attached to and made part of Agreement No. 2107754 solely for the purpose of identifying the property being financed under such Agreement.

"This contractor and subcontractor shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability."

**Total $144,500.00**

SELLER____________________ BUYER____________________

DATE____________________ DATE____________________



## COMMENCEMENT AGREEMENT

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

**Agreement No. 2167754**
Date: November 30, 2015

You, the Customer, and Ascentium Capital LLC ("we", "us", "our") have entered into the above referenced equipment lease, equipment finance agreement, secured loan or similar agreement (which may be one or more schedules to a master agreement) ("Agreement") pursuant to which we will be financing the Equipment or Collateral as defined in and described in the Agreement (in either case "Equipment") as set forth in this Commencement Agreement ("CA"). The Equipment is being delivered at various times and the vendor or vendors of the Equipment have to be paid for each item of Equipment at or before its delivery to you. You agree to commence the initial non-cancelable term of the Agreement immediately even though items of Equipment remain to be delivered to and accepted by you from one or more vendors.

**NOW THEREFOR, you and we hereby agree as follows:**

1. The term of the Agreement will commence on the date of this CA, with the interim term commencing on the date set forth above and the initial term commencing as provided in the Agreement. You acknowledge and agree that notwithstanding the fact that not all items of Equipment have been delivered to and accepted by you as of the date set forth above, the terms and conditions of the Agreement, including your obligation to pay all amounts of rent or debt service set forth in the Agreement, shall commence immediately and, except as otherwise specifically set forth in this CA, irrevocably.

2. You agree to inspect and accept for purposes of the Agreement all undelivered items of Equipment immediately upon their delivery to you. If, when delivered, an item of Equipment is damaged or non-conforming, you agree to cause the vendor in question to repair and/or replace any such item of Equipment and you agree to immediately accept any conforming replacement and/or repaired Equipment for all purposes under the Agreement while continuing to meet all of your payment and other obligations under the Agreement.

3. All amounts anticipated to be disbursed by us on your behalf that have not been disbursed as of the date of this CA will be deemed disbursed by us into a separate holding account for your benefit ("Account"), the contents of which shall be debited by the amount of each subsequent disbursement to vendor(s) as contemplated by this CA. To secure your obligations to us under the Agreement and this CA, you hereby grant to us a security interest in the contents of the Account and any proceeds.

4. The Agreement contemplates a pro-rata adjustment to the payments owed by you under the Agreement in the event the purchase price of the Equipment and other amounts, if any, paid by us on your behalf are higher or lower than those on which the payments set forth in the Agreement are based. Following the delivery and acceptance of all items of Equipment set forth in the Agreement, we shall make any necessary adjustments to the payments as contemplated by the Agreement. You agree that we will have no liability to you in the event we determine to terminate the funding of any vendor because we have determined, in our sole discretion, that there has been a material adverse change in your creditworthiness from that on which we based our approval of the Agreement. In any circumstance contemplated by the preceding sentence, we will continue the Agreement with the Equipment accepted by you and funded by us as of the date we determine to terminate funding the Agreement and we will reduce the amount of each payment of rent or debt service you owe under the Agreement proportionally, taking into account the higher payments made by you up to the date of that determination and any balance in the Account shall revert to us.

5. This CA sets forth the entire agreement of the parties with respect to its subject matter and it may only be amended by a written instrument executed by you and us. In the event of a conflict between this CA and the terms of the Agreement, the terms of this CA shall govern and control, provided however, except as explicitly set forth in Section 4 above, nothing set forth in this CA shall be deemed to affect your obligation to pay and perform all of your obligations as set forth in the Agreement without setoff, abatement or counterclaim. This CA shall terminate and be of no further force and effect following your acceptance and our funding of the last item of Equipment being financed under the Agreement. This CA will be governed by and construed in accordance with the laws of the jurisdiction governing the Agreement.

You agree that a facsimile or other copy of this CA, as executed, shall be deemed the equivalent of the originally executed copy for all purposes.

| CUSTOMER: | CENTRAL USA WIRELESS, LLC | SECURED PARTY: | Ascentium Capital LLC |
|---|---|---|---|
| ✓ Signature: | [signature] CEO | By: | [signature] |
| Printed Name: | CHRISTOPHER HILDEBRANT | Printed Name: | Bryan S. Wheeler |
| Title: | Chief Executive Officer | Title: | Senior Vice President |



**AUTHORIZATION FOR PRE-AUTHORIZED PAYMENTS**

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

**Agreement No. 2167754**

The undersigned CENTRAL USA WIRELESS, LLC ("we," our," "us") hereby authorize Ascentium Capital LLC, its successors and assigns (hereinafter "Ascentium Capital") to automatically initiate and make debit entries (charges) to our bank account (and for our bank to accept and post such debit entries) indicated below for the payment of all amounts owed by us to Ascentium Capital from time to time under or in connection with the above-referenced Agreement ("Agreement").

We understand that Ascentium Capital may impose a fee, and we agree to pay such fee, in the event our bank does not pay a debit entry.

**This authority granted under this Authorization for Pre-authorized Payments is to remain in effect during the term of the Agreement, including all renewals and extensions, and we acknowledge that if we revoke such authority during the term of the Agreement we shall be in default under the Agreement without the requirement of any prior notice from Ascentium Capital as a precondition for such default.**

Any erroneous or incorrect charge will be corrected upon notification to Ascentium Capital. If corrections in the debit account are necessary, it may involve a credit or debit to my account. We agree that a facsimile or other copy of this Authorization, as executed, shall be deemed the equivalent of the originally executed copy for all purposes.

✔ Bank / Depository Name: PEOPLE'S BANK

✔ 9 Digit Bank ABA/Routing Number: 042204952

✔ Bank Account Number: 11630700

✔ Signature: [signature] CEO

✔ Date: 12/1/15

✔ (INCLUDE A COPY OF VOIDED CHECK) ✔

171-20180284

 # AUTHORIZATION TO PERFORM VERBAL VERIFICATION

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

**Agreement No. 2167754**

The undersigned hereby authorizes Ascentium Capital LLC to perform a verbal verification accepting the terms and conditions of the above-referenced Agreement and confirming the identification and condition of the Collateral.

The undersigned agrees that a facsimile or other image of this Authorization to Perform Verbal Verification, as executed, shall be deemed the equivalent of the originally executed copy for all purposes.

Person(s) Authorized to Provide Verbal Verification:

✓Name: ____________ Title: ____________ Phone: ____________

Name: ____________ Title: ____________ Phone: ____________

Name: ____________ Title: ____________ Phone ____________

**CUSTOMER: CENTRAL USA WIRELESS, LLC**

✓ **Signature:** [signature] CEO

**Printed Name:** CHRISTOPHER HILDEBRANT

**Title:** Chief Executive Officer **Date:** 12/04/15 ✓

VENDOR / RETAIL
VERBAL VERIFICATION FORM

Ascentium Capital LLC
23970 HWY 59 N
Kingwood TX 77339-1535
www.AscentiumCapital.com

**Agreement No. 2167754**

Hello my name is and I am with Ascentium Capital LLC. I would like to take a few minutes of your time and ask you a few questions regarding the equipment that you are financing with Ascentium Capital LLC. For your information your agreement number is 2167754. This conversation is being recorded for quality assurance purposes.

Contact Name: CHRISTOPHER HILDEBRANT Title: Chief Executive Officer Phone No.: 513-477-3547 (513) 477-3547

Business Phone No.: 513-469-1500 Personal Guaranty: CHRISTOPHER HILDEBRANT Phone No.:

Name of Person at Business Confirming Information: Mike Dalton Title:

Is your Federal Tax ID Number: 46-2627265

If "No", what is your Federal Tax ID Number? 937 654 2075

Are you exempt from sales/use tax? ☐ Yes ☒ No per Chris VM

If "Yes" and you are exempt from sales/use tax, please provide a valid tax exemption certificate.

Is the equipment address? ~~11210 MONTGOMERY RD, CENTERVILLE, OH 45429~~

If "No" what is the correct equipment address? 408 Braker LN Austin TX

Is the bill-to address? 11210 MONTGOMERY RD, CENTERVILLE, OH 45429

If "No", what is the correct bill-to address?

What is your e-mail address? mike.dalton@centralUSAwireless.com

Can you give me an alternate phone number where you can be reached? (513) 477-3547

**BEGINNING OF PRE FUNDING SECTION ONLY**

**Do you authorize Ascentium Capital LLC to release the 1st disbursement to** Full Fund MTI @ Equip 144,500.00

☐ Yes - If "Yes", starting today you will be charged a per diem rate of $______ for the disbursement

☐ No - If "No", why?

**Do you authorize Ascentium Capital LLC to release the 2nd disbursement to**

☐ Yes - If "Yes", starting today you will be charged a per diem rate of $______ for the disbursement

☐ No - If "No", why?

Total disbursements (1st + 2nd) $

**Do you authorize Ascentium Capital LLC to release the 3rd disbursement to**

☐ Yes - If "Yes", starting today you will be charged a per diem rate of $______ for the disbursement

☐ No - If "No", why?

Total disbursements (1st + 2nd + 3rd) $

**END OF PREFUNDING SECTION**

Agreement No. 2167754

**VERBAL VERIFICATION FORM (cont'd)**

Has all of the equipment been delivered and installed at your place of business? ☐ Yes ☐ No

If "No", when is it expected? ______

When was the equipment received at your place of business? ______

Is the Equipment ☐ New ☐ Used or ☐ (both) New and Used?

If "Used", how old is the equipment? ______

Do you authorize Ascentium Capital LLC to pay your equipment suppliers and start your Agreement? ☒ Yes ☐ No

If "No", why? ______

**NOTES**

| Date | Comments |
|---|---|
| Completed By: | DEC 03 2015 |
| Completed By: | Vendor will not ship until full payment. They do not have equipment but did authorize to release |
| Completed By: | |
| Completed By: | |
| Completed By: | |
| Completed By: | |

**Signature of Individual Performing Verbal Verification with Customer:** [signature]

Date: December 3, 2015

DEC 03 2015



DELIVERY AND ACCEPTANCE CERTIFICATE

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

**Agreement No. 2167754**

To: Ascentium Capital LLC

The undersigned hereby certifies: (i) that all of the property described below ("Equipment"), which is to be financed pursuant to the lease, equipment finance agreement, note, security agreement, loan and security agreement or similar document referenced above (the "Agreement") between Ascentium Capital LLC as lessor, lender or secured party and the undersigned as lessee, debtor or other obligor, has been delivered to, and received by, the undersigned, (ii) the Equipment conforms in all respects to that ordered by the undersigned, (iii) its condition is satisfactory in all respects to the undersigned and (iv) that the Equipment is accepted by the undersigned under the Agreement in all respects, and the undersigned hereby irrevocably directs Ascentium Capital LLC to pay the equipment suppliers the purchase price of the Equipment.

Equipment: See Equipment "Schedule A" attached hereto and made a part hereof

The undersigned agrees that a facsimile or other copy of this Delivery and Acceptance Certificate, as executed, shall be deemed the equivalent of the originally executed copy for all purposes. By executing this Delivery and Acceptance Certificate the undersigned irrevocably acknowledges and agrees that the undersigned's non-terminable installment payment and other obligations under the Agreement have commenced.

**CUSTOMER: CENTRAL USA WIRELESS, LLC**

✓ **Signature:** [signature] CEO

**Printed Name:** CHRISTOPHER HILDEBRANT

**Title:** Chief Executive Officer

✓ **Date Signed:** 12/01/15

371-20150901